BRADFORD, Judge,
dissenting.
I believe that Father received all the process that was due to him. Despite the timing of various occurrences in this cáse, Father has failed to establish that he was denied a meaningful opportunity to be heard. Consequently, I must respectfully dissent. Because I cannot join the majority’s procedural disposition of this case, I would reach the questions of whether the juvenile court’s findings supported its conclusion and whether the juvenile court’s disposition was appropriate. On those questions, I would affirm the judgment of the juvenile court.
*43 I. Whether Father Was Denied Due Process
Father’s argument seems to be based entirely upon the timing of various events in the juvenile court, which he argues is sufficient to establish that the result of his fact-finding hearing was essentially a foregone conclusion. As the Indiana Supreme Court has recently made clear, “when one parent wishes to admit and one parent wishes to deny the child is in need of services, due process requires the trial court to conduct a fact-finding hearing.” In re T.N., 963 N.E.2d 467, 469 (Ind.2012). As for the particulars of the fact-finding hearing, Indiana Code section 31-32-2-3 provides, in part, that during
(1) Proceedings to determine whether a child is a child in need of services [or]
(2) Proceedings to determine whether the parent, guardian, or custodian of a child should participate in a program of care, treatment, or rehabilitation for the child....,
(b) A parent, guardian, or custodian is entitled:
(1) to cross-examine witnesses;
(2) to obtain witnesses or tangible evidence by compulsory process; and
(3) to introduce evidence on behalf of the parent, guardian, or custodian.
Father received all of the process to which he was entitled pursuant to the above statute; the record does not indicate that Father was unable to cross-examine witnesses, obtain compulsory process, or introduce evidence on his behalf. Of course, none of these statutory protections would matter if the hearing were somehow a sham, which is essentially what Father is arguing. The record, however, does not support this argument.
Despite the fact that the juvenile court had already found L.C. to be a CHINS based on Mother’s admissions, the juvenile court quite clearly indicated at the end of Father’s fact-finding hearing that the basic question of L.C.’s CHINS status was not, in fact, entirely settled:
[Father’s counsel]: .... So, we ask that you close this case [and find L.C. not to be a CHINS] as [DCS has] not met their burden to show that without State coercion that this child’s needs are not being met, that there’s an endangerment that [Father] could present.
THE COURT: I’m going to take the issue under advisement.
Tr. 92. So, although the juvenile court did eventually find L.C. to be a CHINS, all indications are that Father was given every opportunity to forestall such a result. In other words, Father was given the opportunity to establish that the coercion of the State was not necessary but was unable to do so.
The juvenile court’s disposition is a further indication that Father’s fact-finding hearing was meaningful. Based on evidence presented at his fact-finding hearing, the juvenile court ordered temporary placement of L.C. at Father’s home, instead of the therapeutic foster placement that had been previously ordered. The fact that Father was able to obtain some of what he requested undercuts Father’s contention that the fact-finding hearing was meaningless. I conclude that Father was not denied due process.[1]
*44 II. Whether the Juvenile Court Erred in Concluding that L.C. is a CHINS
Father challenges the juvenile court’s conclusion that L.C. is a CHINS. Pursuant to Indiana Code section 31-34-1-1,
A child is a child in need of services if before the child becomes eighteen (18) years of age:
(1) the child’s physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child’s parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
(2) the child needs care, treatment, or rehabilitation that:
(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
As DCS points out, no statute requires specific findings in a CHINS adjudication order. Here, the juvenile court made limited findings and conclusions sua sponte.
As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind.1997). But we review the remaining issues under the general judgment standard, under which a judgment “will be affirmed if it can be sustained on any legal theory supported by the evidence.” Id. (internal quotation marks omitted).
In re S.D., 2 N.E.3d 1283, 1287 (Ind.2014).
While special findings entered sua sponte control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court.
C.B. v. B. W., 985 N.E.2d 340, 344 (Ind.Ct.App.2013).
On April 8, 2014, the juvenile court initially adjudicated L.C. to be a CHINS based on Mother’s admission: “[L.C.], born May 25, 2005, is a child in need of services because [Mother] was involved in an altercation with her boyfriend in front of the child. The Mother was also intoxicated during the altercation with her boyfriend. Therefore, the coercive intervention of the Court is necessary.” Appellant’s App. p. 60.
A. Whether L.C. Is in Need of Services
Father first seems to argue that the juvenile court declared L.C. to be a CHINS, at least in part, to penalize him for not being able to anticipate the issues that arose at Mother’s residence. Father, however, does not challenge the juvenile court’s underlying findings with respect to those issues, and his argument, to the extent that it focuses on his actions, is therefore misplaced.
A CHINS adjudication focuses on the condition of the child. As the examples in the preceding paragraph illustrate, the acts or omissions of one parent can cause a condition that creates the need for court intervention....
While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that — a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent.
*45 [[Image here]]
[We] hold that a CHINS determination establishes the status of a child alone. Because a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage. [T]he conduct of one parent can be enough for a child to be adjudicated a CHINS. Indeed, to adjudicate culpability on the part of each individual parent in a CHINS proceeding would be at variance with the purpose of the CHINS inquiry: determining whether a child’s circumstances necessitate services that are unlikely to be provided without the coercive intervention of the court. Said differently, the purpose of a CHINS adjudication is to protect children, not punish parents. The resolution of a juvenile proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding.
In re N.E., 919 N.E.2d 102, 105-06 (Ind.2010) (citations omitted). Put another way, the question is not whether L.C. is a CHINS “as to” Father, Mother, or both, it is whether she is in need of services, period. Because Father does not challenge the finding underlying the juvenile court’s determination that L.C. is in need of services, reversal on this basis is not warranted.
B. Whether Coercive Intervention of the Court is Necessary
Father also argues that, even if L.C. is in need of services, coercive intervention by the court is not necessary for her to receive them. At Father’s disposition hearing, the juvenile court made the following statement regarding the need for coercive intervention:
Now my issue with that is that having knowledge that there’s a drinking problem, I don’t feel that you fully assessed whether [Mother] had, was an appropriate parent before sending [L.C.] to live with her and I understand that you are not the person [who] instigated the incidents that led to the filing of this, but when you did not fully assess whether [L.C.] would be safe with [Mother] and when [Mother] engaged in the situation that she did that placed her in an endangering environment and I do feel that the coercive intervention of the Court is necessary to make sure that should [L.C.] return to you that you really do understand what needs to be taken care of before a child is placed back with a person who may not be the most appropriate parent. So, I am going to continue the adjudication that [L.C.] is in need of services based on those things.
Tr. p. 99.
Given Father’s history of questionable judgment regarding L.C., the juvenile court’s conclusion that coercive intervention is necessary is clearly supported by the record. Father allowed L.C. to live with Mother despite knowing that Mother had “drinking issues” and that Mother’s boyfriend was a “heavy drinker[.]” Tr. pp. 78, 80. Of further concern is evidence related to whether Father can adequately care for L.C. and provide her the services she requires without coercive intervention. Father has suffered a stroke and despite having full custody of L.C., sent her to live with Mother because he could not physically or financially care for her and because he felt Mother would be better equipped to help L.C. with her “womanhood” issues. Tr. p. 37. Given Father’s history and questions regarding his ability to appropriately parent L.C., it was not erroneous for the juvenile court to conclude that intervention was warranted in order to ensure that L.C. received the services she requires.
*46 Father points to his testimony that he would be willing to take L.C. to therapy and that he had a plan to pay for it. The juvenile court, however, was under no obligation to credit this testimony or give it the weight that Father claims it deserves. Father’s argument in this regard is an invitation to reweigh the evidence, which this court will not do. See Thompson v. State, 804 N.E.2d 1146, 1149 (Ind.2004) (“As a general rule, factfinders are not required to believe a witness’s testimony even when it is uncontradicted.”).
III. Whether the Juvenile Court’s Disposition was Appropriate
Finally, Father argues that the juvenile court’s disposition was not authorized by statute. Pursuant to Indiana Code section 31-34-19-10,
(a) The juvenile court shall accompany the court’s dispositional decree with written findings and conclusions upon the record concerning the following:
(1) The needs of the child for care, treatment, rehabilitation, or placement.
(2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
(3) Efforts made, if the child is a child in need of services, to:
(A) prevent the child’s removal from; or
(B) reunite the child with;
the child’s parent, guardian, or custodian in accordance with federal law.
(4) Family services that were offered and provided to:
(A) a child in need of services; or
(B) the child’s parent, guardian, or custodian;
in accordance with federal law.
(5) The court’s reasons for the disposition.
(b) The juvenile court may incorporate a finding or conclusion from a predisposi-tional report as a written finding or conclusion upon the record in the court’s dispositional decree.
As previously mentioned, “we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court.” C.B., 985 N.E.2d at 344.
Father contends that the juvenile court erred in continuing L.C.’s placement in therapeutic foster care, due to the difficulty such a placement cause with respect to visitation and the continuing harm to L.C. of being in foster care. Father also argues that L.C. can obtain the therapy she needs if placed with him at his current home in Bedford, Indiana. Father’s argument, however, ignores that the juvenile court dispositional order provided, in part, “placement of [L.C.] in temporary in-home trial visitation with father by the end of today contingent upon father participating in the court-ordered services.” Appellant’s App. p. 17. Essentially, Father received what he asked for placement of L.C. with him), albeit conditionally. So long as Father is compliant with ordered services, he does not have to worry about visitation difficulties, etc. Under the circumstances of the case, the juvenile court’s contingent placement with Father seems like an eminently reasonable disposition. Father has failed to establish that the juvenile court erred in this regard.
Because I would affirm the judgment of the juvenile court in its entirety, I must respectfully dissent.

. Father relies on this court's recent opinion in In re S.A., 15 N.E.3d 602 (Ind.Ct.App.2014). As DCS points out, however, it has petitioned for a rehearing in S.A., and as of December 15, 2014, that petition is still pending. Because S.A. has not been certified, Father cannot properly rely upon it.